AO 241   (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

FILED
CLERK, U.S. DISTRICT COURT

APR 21 2022

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| United States District Court | District |
|---|---|

| Name Qayed Murtaza Shareef | Prisoner No. BM2497 | Case No. 8:22cv850-DOC-KS |
|---|---|---|

FEE DUE

Place of Confinement

Corcoran State Prison

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| Qayed Murtaza Shareef  v. | Ken Clark, Warden, Corcoran |

The Attorney General of the State of: California   Rob Bonta (SBN 202668)

## PETITION

1. Name and location of court which entered the judgment of conviction under attack

   Superior Court of Orange County

2. Date of judgment of conviction  11/2/2019

3. Length of sentence  25 years to Life

4. Nature of offense involved (all counts)

   288(A) 32 counts

5. What was your plea? (Check one)
   (a) Not guilty  ☑
   (b) Guilty  ☐
   (c) Nolo contendere  ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury  ☑
   (b) Judge only  ☐

7. Did you testify at the trial?
   Yes ☑   No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☑   No ☐

(2)

AO 241   (Rev. 5/85)

9.  If you did appeal, answer the following:

(a) Name of court  Court of Appeal of California, 4th Appellate dist, Div 3

(b) Result  Appeal Denied

(c) Date of result and citation, if known  11/23/2021

(d) Grounds raised  Miranda rights violation, coerced confession while in custody

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court  California Supreme Court

(2) Result  Review denied

(3) Date of result and citation, if known  2/9/2022

(4) Grounds raised  Miranda rights violation, coerced confession while in custody.

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court _____

(2) Result _____

(3) Date of result and citation, if known _____

(4) Grounds raised _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☑  No ☐

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court  Superior Court of Orange County

(2) Nature of proceeding  Habeas Corpus for ineffective assistance of Counsel

(3) Grounds raised  ① Jury Misconduct ② Trial Judge Assignment bias ③ Evidence Stipulation not observed in trial ④

(3)

AO 241   (Rev. 5 85)

Evidence not allowed by Judge ⑤ Nexus never established ⑥ Attorney failed argue motion in court and waived preliminary hearing

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐   No ☑

(5) Result Denied because I failed to serve the D.A.

(6) Date of result 12/2/2021

(b) As to any second petition, application or motion give the same information:

(1) Name of court Court of Appeals, 4th Appellate dist. Div 3

(2) Name of proceeding Direct Appeal of issues raised via Habeas Corpus in Superior court

(3) Grounds raised ① Jury Misconduct ② Trial Judge a ignment bias ③ Evidence Stipulation not observed by trial Judge ④ Evidence clearing petitioner not allowed by Judge ⑤ Electronic Nexus never established by prosecution ⑥ Attorney's waived preliminary hearing (Ineffective Assistance of Counsel)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐   No ☑

(5) Result _____ Pending

(6) Date of result _____

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.      Yes ☐   No ☑
(2) Second petition, etc.     Yes ☐   No ☑

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:
I am still waiting for the outcome in the appellate court of California

12.  State concisely every ground on which you claim that you are being held unlawfully.  Summarize briefly the facts supporting each ground.  If necessary, you may attach pages stating additional grounds and facts supporting same.
     CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court.  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241   (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: Conviction obtained by confession that was coerced while in Custody without being Mirandized

Supporting FACTS (state *briefly* without citing cases or law): The claimant's home was searched by 10 armed Law enforcement personnel, and during that process claimant was escorted to his garage for an interview. During this time the Claimants home was occupied by the investigating team. the claimant was coerced and lied to during the custodial interview without his Miranda rights.

B. Ground two: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

_____

AO 241   (Rev 5 85)

C.  Ground three: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

D.  Ground four: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

13.  If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

_____

14.  Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐   No ☐

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a)  At preliminary hearing *Gary Laff and Andrew Fher*

(b)  At arraignment and plea *Gary laff and Andrew Flier*

(6)

AO 241   (Rev. 5/85)

(c) At trial   Kim Santini - 3334 E. Coast Hwy #333
Corona Del Mar, CA 92625

(d) At sentencing   Eisner and Gerin - Allan Eisner
14401 Sylvan Street, Suite 112  Van Nuys, CA 91401

(e) On appeal   Stephen M. Hinkle - 290 Martellago dr,
N. Venice, FL 34275

(f) In any post-conviction proceeding   Pro - Se

_____

(g) On appeal from any adverse ruling in a post-conviction proceeding   _____

_____

16.   Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes  ☑   No  ☐

17.   Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes  ☐   . No  ☑
(a)  If so, give name and location of court which imposed sentence to be served in the future:   _____

_____

(b)  Give date and length of the above sentence:   _____

(c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes  ☑   No  ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

4/11/2022
_____
Date

_____
Signature of Petitioner

(7)

(c)

## Background

The claimant seeking relief is a layman, and immigrated to the U.S. as a refugee from the war in Afghanistan. As a child Mr. Shareef witnessed the Russian invasion of his country firsthand which included bodies of dead Afghans on the streets much like we are witnessing with the war in Ukraine now. Mr. Shareef's father and other family members were arrested and taken to prison where most of them were executed. His only substantial experience with law enforcement occurred where force was used and weapons were drawn, and in one instance an automatic weapon was placed on his head by the KGB operatives looking for his father. Mr. Shareef suffers from PTSD related to his experience as a young boy.

Further, he didn't have any legal experience nor did he watch T.V shows like Law & order to understand his situation. Mr. Shareef knew upon the arrival of the armed police that this was a serious matter and that nor he or his family would be able to leave the house if the issue was not settled. From the time he and his family were placed on the sidewalk he felt that he was in custody and had to comply based on his traumatic experiences as a child.

②

Meanwhile, the Law enforcement's entire motive was to make an arrest that day, and they would do anything including lie repeatedly, refuse constitutional rights to trick and coerce a confession, which was tainted. Mr. Shareef didn't provide any independent facts except for what he was told by the detectives. In one example, he stated that 5 videos had been sent, when the actual number was 30.

Mr. Shareef confided of his abuse as a child in India to the detectives prior to any confession, which was followed up with a lie about providing help. Mr. Shareef several times asked about a lawyer, and in one instance ▓▓ the detective clearly said "no" as the first response and then added that it might not be necessary. At the evidentiary hearing, the trial Judge told the prosecution that he basically asked for a lawyer and the first words in response was "no". At this point, Mr. Shareef was in custody as was his family because 10 armed police officers were in his house restricting the movements of his family. Mr. Shareef had not been read his rights nor was he aware of what his actual rights were

In Mr. Shareef's appeal brief, his attorney failed to provide a clear background of the trauma and baggage Mr. Shareef was carrying with him that faithful day, while being a law abiding citizen and a successful entrepreneur. When law enforcement lied to Mr. Shareef about only wanting an apology for the family and depriving his constitutional rights, all Mr. Shareef wanted at that point in time was to make the police leave his home and make the situation go away.

In this matter, the claimants rights as a U.S. citizen were violated regardless of the reason why the police showed up to his house that day this violation of his rights were continuously trampled by the trial judge and then the appellate judges, who stated that this was a "close Miranda case". It was not a close Miranda case, rather in every form or fashion this case meets all the standards of Miranda, thus requires for a reversal of the lower courts decisions.

Its possible that the claimant confessed to protect someone else, or that he has a young child and felt that the family of the victims deserved closure. All of this occurred because the investigators made promises



and lied continously even during the trial. Its not just to give the rights of someone while violating the rights of another.

The police made promises of help to claimant for the abuse he had suffered as a child for years. They followed up their promise with 750 years of stacked charges on a case where they claimed that the "family was looking for an apology", and subsequently the claimant was sentenced to life in a case where no physical harm occurred. Although, that does not take away from the serious nature of the matter.

Through the coerced confession that was custodial the investigators provided the prosecution the only viable evidence against claimant. the fact that the claimant was given his rights didit matter to trial judge or jury. As the claimants state appointed attorney argued in his appeal, without this tainted custodial confession the states case was light on evidence.

Again, the evidence collected at 3 laurelwood including 5 devices, which all were analyzed by the F.B.I expert. He stated at trial that nothing

(5)

that would have been incriminating or similar to the
charges brought against claimant were found on
any of the devices. He also stated that the devices
had not been cleared or deleted by claimant.
Not finding one photo or video, text or message
on 5 devices is unusual in such cases. Most if
not all people involved in these types of cases
save the videos and images.

The police also discovered a blue gap sweater
that appeared in the videos exchanged in the
closet of the claimant in a plastic bag. This
is also unusual because all of the other clothing
for claimant were hanging in hanger in the
closet. Any clothes not belonging to claimant would
have been in the garage, and more importantly
the investigators claimed that the text and videos
were exchanged at 25 woodcrest ln but the
search was done at 3 laurelwood. The investigators
already knew that they needed to find the blue
gap sweater in claimants room along with the
massager. Had the search occurred at 25
woodcrest ln neither would have been in
the claimants bedroom. Both of those items
had been moved to the bedroom after the
move and more specifically close to or on the
day of the search.

6.

It was a known fact that other men lived at the claimants house and in some instance shared his clothes. Had the blue Gap sweater been exclusively used by claimant at all times, then why was it in a plastic bag and why was a gray gap sweater hanging from a hanger in the claimants closet.

In the case of the massager, the device was not found in the claimants night dresser/stand but rather another dresser in the room. The same device would have been found in the guest bedroom at 25 woodcrest ln at the time of the text and video exchange.

The prosecution's claim that there was a case without a confession was weak. The only connection to texts and exchange is the coerced confession, which was illegally obtained by the police. Not one witness was produced to say that claimant with certainty was the one sending the messages. However, the F.B.I investigators noted from viewing the videos that the person sending the videos had a birthmark like discoloration on the right knuckle. when this was brought up in court, the prosecution stated that claimant could have had surgery to remove it.



Claimant's trial attorney pointed out his hand
a year after the incident in the custodial
interview in the claimants dark garage, that
there was no dark discoloration birthmark on
claimants right hand. Again, prosecution minimized
the issue by stating that claimant could have
had surgery.

Claimants attorney prior to closing arguments
attempted to submit two images of the
right hand of person sending videos and texts
showing the discoloration, which was promptly objected
to by prosecution and sustained by the judge
for being late. The images were a screen
shot from the F.B.I video's shown to the
jury. In this instance, an evidence that could
and should lead to a not guilty verdict was
not presented properly by trial attorney to jury,
instead the jury used nearly 2 hours of
claimants statements to convict him to Life
in prison, while ignoring physical evidence that
was contrary to the coerced confession.

The case needs to be reversed to preserve
claimants constitutional rights under the 2nd,
4th and 5th amendments. The federal court should not
have any biased towards claimant regardless



of race, religion or ~~xx~~ color, unlike the lower trial and appellate courts who ignored the law to obtain and maintain a tainted conviction.

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) Supreme Ct. No. |
| | ) |
| Plaintiff and Respondent, | ) Court of Appeal |
| | ) No. G059364 |
| v. | ) |
| | ) Superior Court |
| QAYED MURTAZA SHAREEF, | ) No. 15HF0093 |
| | ) |
| Defendant and Petitioner. | ) |
| | ) |

APPEAL FROM THE SUPERIOR COURT OF ORANGE
COUNTY

Honorable Craig Robison, Judge

## PETITION FOR REVIEW

Stephen M. Hinkle, Attorney at Law
SBN 124407
290 Martellago Dr.
N. Venice, FL 34275
(530) 553- 4425
hinkle124407@gmail.com
Attorney for Petitioner.

By appointment of the Court
Of Appeal under the Appellate
Defenders, Inc. program

1

## TABLE OF AUTHORITIES

### Cases

*Berkemer v. McCarty* (1984) 468 U.S. 420 [82 L. Ed. 2d 317, 104 S. Ct. 3138] ...................................................................................8

*Miranda v. Arizona* (1966) 384 U. S. 436 [86 S. Ct. 1602, 16 L. Ed. 2d 694]...........................................................................6, 8, 9

*People v. Aguilera* (1996) 51 Cal.App.4th 1151.............................10

*Stansbury v. California* (1994) 511 U.S. 318 [114 S.Ct. 1526, 128 L.Ed.2d 293] .......................................................................9

*Thompson v. Keohane* (1995) 516 U.S. 99 [116 S.Ct. 457, 133 L.Ed.2d 383] ..........................................................................9

*Yarborough v. Alvarado* (2004) 541 U.S. 652 [124 S.Ct. 2140, 158 L.Ed.2d 938] ..........................................................................9

### Statutes

Penal Code section 288, subdivision (a) ...........................................7

Penal Code section 288.2, subdivisin (a)(1).....................................7

Penal Code section 311.4, subdivision (c).........................................7

Penal Code section 667.61, subdivision (c)........................................7

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) Supreme Ct. No. |
| | ) |
| Plaintiff and Respondent, | ) Court of Appeal |
| | ) No. G059364 |
| v. | ) |
| | ) Superior Court |
| QAYED MURTAZA SHAREEF, | ) No. 15HF0093 |
| | ) |
| Defendant and Petitioner. | ) |
| | ) |

APPEAL FROM THE SUPERIOR COURT OF ORANGE
COUNTY

Honorable Craig Robison, Judge

## PETITION FOR REVIEW

TO THE HONORABLE CHIEF JUSTICE TANI CANTIL-
SAKAUYE AND TO THE HONORABLE ASSOCIATE
JUSTICES OF THE CALIFORNIA SUPREME COURT:

Defendant and petitioner QAYED MURTAZA SHAREEF
respectfully petitions this court for review of the published
opinion by the Fourth District, Division Three, which affirms the
judgment, filed November 23, 2021. A copy of the opinion of the
Court of Appeal is attached to this petition as Appendix A. (Cal.
Rules of Court, rule 8.504(b)(4).)

### ISSUE PRESENTED.

The following issue is presented for full review (Cal. Rules
of Court, rule 8.500(b)(1)) or review and transfer (Cal. Rules of
Court, rule 8.500(b)(4)):

scrutiny. Petitioner therefore respectfully requests this court grant review on this important constitutional question.

## PETITION FOR REHEARING.

Although a Petition for Rehearing could have been filed in the Court of Appeal, neither party filed such a petition. (Cal. Rules of Court, rule 8.504(b)(3).)

## STATEMENT OF THE CASE.

An information filed on March 14, 2018, charged petitioner Qayed Murtaza Shareef in counts one through 30 with lewd act upon a child under 14 (Pen. Code[2] § 288, subd. (a)); in count 31 with using a minor for sex acts (§ 311.4, subdivision (c)); and in count 32 with distributing pornography to a minor. (§ 288.2, subd. (a)(1).) Petitioner was further charged with respect to counts one through 30 with substantial sexual contact with a minor (§ 1203.066, subd. (a)(8), and with committing the offenses against more than one victim. (§ 667.61, subd. (c).) (1CT pp. 206-214.)

Trial began on October 28, 2019. (1CT p. 64.) On November 4, 2019, petitioner was found guilty on all charges and on all allegations of substantial sexual contact were found true; the multiple victim allegation was found true on counts 11, 12, 14, 15, 16, 17, 18, and 19, and found not true on the other counts where it was alleged. (1CT pp. 80-95.) On April 23, 2020, petitioner filed a motion for new trial. (1CT p. 100.) On July 24, 2020, that motion was denied and petitioner was sentenced to 25 years to life on count 11. Sentence for all other counts were

---

[2] All further references are to the Penal Code, unless noted.

of action in any significant way." (*Miranda v. Arizona, supra,* 384 U.S. at p. 477.) "Two discrete inquiries are essential" to the custody determination: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." (*Thompson v. Keohane* (1995) 516 U.S. 99, 112 [116 S.Ct. 457, 133 L.Ed.2d 383]; see *Yarborough v. Alvarado* (2004) 541 U.S. 652, 662 [124 S.Ct. 2140, 158 L.Ed.2d 938].) "Courts must examine 'all of the circumstances surrounding the interrogation' and determine 'how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.'" (*Id.* at p. 663, quoting *Stansbury v. California* (1994) 511 U.S. 318, 322 [114 S.Ct. 1526, 128 L.Ed.2d 293].)

It was not contested that there were no *Miranda* warnings given here, at any time before or during the interrogation. The trial court held that petitioner was not in custody, so no *Miranda* warnings were required. (1RT p. 122.) An objective review of the record refutes that holding.[3]

This interrogation took place after petitioner was woken up by at least eight heavily armed police officers serving a search warrant. (1RT p. 33-34, 46.) Petitioner's several month old son was sleeping, and he was not allowed to retrieve his son while the house was being cleared. (1RT pp. 47-48.) This is already a far

---

[3] The following analysis includes reference to petitioner's recorded interview, which was listened to by the court during the suppression hearing.

in here." (6CT pp. 1301-1302.) She says they're just trying to figure out who the person was [sending and receiving the videos]. The family are "not actually that upset," but "just [wanted] an explanation...kinda like I'm sorry kind of thing"..."All the family wants is like an apology." (6CT p. 1303-1304.) Longnecker states they weren't "judging people," and "we just, they just want an apology....you know, that kinda thing...so it's not, it's not like the end of the world or anything." (6CT p. 1305.) Detective Perez told petitioner "we're not here to judge you...you closed the door...it stays here with us." (6CT p. 1315.) Petitioner says he's never talked to a psychiatrist, but he needs some help. Longnecker replies "we can help you get that, for sure." (6CT p. 1336.) Longnecker leaves the room and Perez tells petitioner "like Sandy was saying, if that's something you need we could obviously, uh, help you get that help." (6CT p. 1341.) Petitioner says he never molested a child but he needs help and Longnecker says she has "so many resources for you." (6CT p. 1355.) She then says "I don't think when you made that video that you were trying to hurt anybody." (6CT p. 1356.) Longnecker states that she knows it is petitioner on the videos. (6CT p. 1365.) She says "we're gonna get you help." (6CT p. 1367.)

Further, petitioner has a constitutional right to an attorney, but Longnecker knows that if petitioner gets an attorney the interrogation will be over. Very early in the interrogation, petitioner asks if he has to get a lawyer. Longnecker tells him no, that he's not under arrest or anything like that. (6CT p. 1303-1304.) Later, petitioner questions

her. That petitioner had the right to remain silent guaranteed by the Fifth Amendment to the United State Constitution did not matter; all that was important was to force a confession out of petitioner by any means possible. In so doing Longnecker deliberately circumvented petitioner's constitutional rights in a carefully planned approach to break down petitioner and obtain a confession.

While the Court of Appeal acknowledged that midway through questioning the interrogation did become custodial, as petitioner was informed he would either be arrested or removed from the house, that custodial finding should have been made early on, when Longnecker knew they had the right suspect, and communicated that knowledge to petitioner. Longnecker even stated that if they identified who the person is in the video there will be a criminal filing (6CT p. 1348), and she had already told petitioner he was the person in the video. There is no meaningful distinction between the two interactions. Petitioner's confession was inadmissible. For these reasons, this court should exercise its discretion and grant review.

In the Appeal court

1  The people of the state of California
2  Plaintiff and Respondent.
3  v.
4  Qayed Murtaza Shareef    >   Pro Se
5  Defendent and Petitioner
6
7  Court of Appeal
8  No. G059364
9
10 Superior Court
11 No. 15HF0093
12
13         Petition for Appeal
14
15 Defendent and Petitioner Qayed Murtaza
16 Shareef respectfully petitions this court
17 for review of 6 new grounds for a
18 reversal of the conviction on November
19 second, 2019 by the superior court of
20 Orange County.
21
22 Defendent is representing himself as a
23 layman and Pro Se in this matter.
24
25 The grounds being raised were initially
26 appealed via Habeas Corpus by defendent
27 in the Superior Court of Orange County.

2

1 The Habeas Corpus was denied on two
2 grounds, one that the Orange County D. A
3 was not served and second that the
4 grounds raised should have been on a
5 direct appeal. Judge Cheri Pham was
6 the presiding Judge and gave her opinion
7 on or around December 2nd.
8
9 The reason why the 6 grounds were not
10 included was because the defendent
11 had a state appointed attorney who
12 refused to include them in the direct
13 appeal which was denied in a "close
14 Miranda" case by the appeal court
15 on November 22nds of 2021.
16
17 Briefly, the 6 grounds are as follows.
18                          I.
19 1 The Trial Judge was made aware of
20   conflicts concerning a single juror
21   during the opening day of trial. Petitioner
22   was not allowed to confront, question or
23   explore possible harm to his fair trial
24   rights or seek a mistrial. (Exhibit. P3)
25                          II
26 2. Ineffective Assistance of Counsel during
27   assignment of Trial Judge (Exhibit P.6)

III

1  3. Orange County D.A. used evidence that
2  Judge had stipulated not to be used
3  prior to start of trial (Exhibit P. 8)
4
IV

5  4. Trial Judge didn't allow crucial photo
6  evidence to be viewed by Jury after
7  an objection by the D.A. was sustained
8  due to trial lawyers delayed request
9  to admit as evidence, thus providing
10 the jury with reasonable doubt of
11 the identification of the person
12 responsible for the crimes (Exhibit P. 10
13

V

14 5. State never established electronic
15 evidence, that texts and videos were
16 sent by defendant or that defendant
17 was Jeremy Stevens (Exhibit P. 12
18

VI

19 6. Trial Attorney failed to properly
20 argue a motion for suppression of
21 statements obtained through coercion
22 (Exhibit P. 14
23
24
25
26
27

4

1 The plaintiff's trial attorney, Ms. Kim Santini
2 wrote an Affidavit regarding the issues she
3 dealt with after becoming the attorney during
4 pre-trial. (Exhibit P.24)
5
6 the plaintiff is filing the appeal primarily
7 on the basis of ineffective assistance of
8 counsel due to significant errors commited by
9 Ms. Santini during trial. [ ... cumulative effect
10 of those errors should be considered together
11 [P496] , .... Washington vs Smith 219 F. 3d 620
12 634-35 (7th cir. 2000), [ In some cases a
13 single critical error may render counsel's performance
14 constitutionally defective. Nero vs Blackburn 597
15 F. 2d 991 (5th cir. 1979).
16
17 The fact that trial attorney failed to inform
18 the plaintiff of the importance of Jury misconduct,
19 and didn't allow for plaintiff to confront, question
20 or explore possible harm to his fair trial rights
21 under the 6th amendment on ground 1 is proof
22 of her effectiveness as counsel. [ ..."but for
23 counsels unprofessional errors, the result of the
24 proceeding would have been different .... Strickland
25 vs Washington 104 sict 2052 (1989) ["the petitioner
26 contends that his attorney's failure to challenge
27 or strike jurors who had ~~strong~~ relationships

5

1  strongly suggestive of pro-prosecutorial bias...
2  Harris vs Housewright. 697 F. 2d 020 (1982) p 207
3
4  On Ground 4, the trial attorney had been aware
5  of the photo evidence from the F.B.I. videos
6  showing the birthmark like discoloration, but
7  she failed to ~~sub~~ submit into evidence the photos
8  in a timely manner giving the prosecution the
9  opportunity to object. the Plaintiff does not
10 have a birthmark like discoloration on his right
11 Knuckle, nor has he done surgery as suggested
12 by the prosecution. The dark birthmark like discoloration
13 is not even present in the custodial investigation)
14 interrogation video that was played to the jury.
16 [... particular case be violated by even an isolated
17 error of counsel if that error is sufficiently
18 egregious and prejudicial. Murry vs Carrier, 477
19 U.C. 496. 91 L. ED 2d 397, 106, s. ct. 2639 ('1986)
20
21 The errors committed by counsel in effect caused
22 ~~for~~ plaintiff to be convicted due to ineffective
23 assistance of counsel
24
25 Plaintiff is seeking a reversal of conviction
26 and an opportunity to recieve a fair trial
27 as afforded to him by the constitution and the
28 5th amendment

6

1 My trial was not by a jury of my peers, I am
2 a swarthy complected Muslim with an ethnic
3 name, while the jury consisted of ethnicities other
4 then mine. the only juror of same ethnicity was
5 removed by prosecution during selection, and
6 as for assistance of counsel that was ineffective
7 My rights under the 6th amendment were not
8 observed.
9
10 the main source of evidence used for my conviction
11 was my own coerced statement taken under
12 custody which are a violation of my 5th amendment
13 rights of not being compelled in any criminal
14 case to be a witness against myself. The court
15 allowed for my statements to be heard by the
16 jury leading to a conviction, while not presenting
17 any eyewitness or video, or photo of me
18 committing the alleged crime.
19
20 In the appeal on the issue of Miranda, the
21 judge's panel ruled that not all of the statements
22 should have been used, thus tainting the conviction
23 because the statement made to the plaintiff wife
24 were made during the same custodial setting,
25 but the jury heard all of the statements.
26 Based on that opinion alone, the plaintiff should
27 recieve a ~~new~~ reversal
28

7

1 The plaintiff would like to make the court aware
2 of a separate issue that has being raised via
3 Habeas Corpus in Superior Court of Orange County
4 regarding the issue of unreasonable search and
5 seizure under the 4th Amendment.
6
7 Briefly, the plaintiffs was searched via a
8 probable cause warrant at his residence of
9 3 laurelwood, where he lived with his wife, son,
10 and brother in-Laws starting on January of
11 2014, a few days after the alleged chats
12 that occurred via the tango app. however, the
13 said chats occurred at an I.P. address
14 at 25 woodcrest Ln according to the F.B.I
15 what probable cause did the investigating team
16 have to obtain a search warrant for another
17 home with a completely different I.P. address.
18 the investigation of the I.P address led the
19 F.B.I and the task force to 25 woodcrest lane,
20 not 3 laurelwood. There after, the team through
21 the use of the post office employee, who then
22 became a juror connected 3 laurelwood to the
23 chats that occurred in December of 2013. The
24 investigating team surveyed 3 laurelwood because
25 the mail from 25 woodcrest was being forwarded
26 to 3 laurelwood. At what point in the investigation
27 did they determine probable cause when no one

1 was in harms way, nor did anyone in the house
2 demonstrate behavior that was suspicious.
3
4 Law enforcement didn't establish a nexus
5 between the I.p address at 3 laurelwood
6 and 24 woodbarn to obtain a legal search
7 warrant. In the 2½ months of surveylance
8 there wasn't once instance of illegal activity.
9 However, upon learning the identity of the
10 plaintiff, the task force saw an opportunity
11 to put together a big case for the media
12 the plaintiff was a successful Muslim
13 American entrepreneur, and the CEO of a
14 public company. In this regard, both the plaintiffs
15 race and success as a digital media executive
16 played a part in obtaining the search warrant.
17 the plaintiff had been a law abiding citizen,
18 and had not demonstrated any untoward behavior
19 that would have given the judge reason to
20 issue the search warrant, which was in
21 violation of Plaintiffs 4th amendment rights.
22
23 The search warrant issue will be joined with
24 this appeal once it has been formally heard
25 via the habeas in Superior Court
26
27 Claimant is seeking reversal

Qayed shareef
BM 2497/ 3B05 -121
PO Box 3466
Corcoran, CA 93212

CORCO
STATE

CLERK U.S. DISTRICT C
RECEIVED
APR 21 2022
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

CV intake

Cle
Rona
Buil
411
#105
Sant

LEGAL MAIL





CORCORAN
STATE PRISON

US POSTAGE ℠ PITNEY BOWES

ZIP 93212   $ 008.70⁰
02 1W
0001386349 APR 20 2022



RECEIVED
CLERK, U.S. DISTRICT COURT

APR 21 2022

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

Clerk of Court
Ronald Reagan Federal
Building and Courthouse
411 w 4th street
# 1053
Santa Ana, CA 92701-456